UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
JIM HOGUE, EMILY PEYTON,           :
MORNINGSTAR PORTA and her minor    :
son S.P., KATHLEEN M. TARRANT,     :
DEBORAH DAILEY, DOES I-XX,         :
                                   :
     Plaintiffs,                   :
                                   :
     v.                            :   Case No. 2:20-cv-218
                                   :
PHILIP B. SCOTT, in his individual :
capacity and official capacity as  :
Governor for the State of Vermont, :
DOES I-IV,                         :
                                   :
     Defendants.                   :
```

## OPINION AND ORDER

Plaintiffs Jim Hogue, Emily Peyton, Morningstar Porta and her minor son S.P., Kathleen M. Tarrant, and Deborah Dailey[1] ("Plaintiffs"), together with a group of "Doe" Plaintiffs, bring this action against Governor Phil Scott and four unnamed "Doe" Defendants, claiming the Governor's executive orders in response to the Covid-19 pandemic were unlawful. Defendants have moved to dismiss for failure to state a claim (ECF No. 55), arguing they are protected by both sovereign and qualified immunity, that Plaintiffs lack standing, and that the allegations fail to set forth a plausible claim for relief. Also before the Court

---

[1] Plaintiff Emily Peyton has filed a Suggestion of Death informing the Court that Plaintiff Deborah Dailey is deceased. ECF No. 67.

is Plaintiff Emily Peyton's motion for a moratorium on child vaccinations (ECF No. 60), her emergency motion for a permanent injunction halting such vaccinations (ECF No. 62), and her motion for discovery (ECF No. 69).  For the reasons set forth below, Defendants' motion to dismiss is **granted**, Plaintiff Peyton's motions are **denied** as moot, and this case is **closed**.

## Factual Background

The factual background of this case is largely set forth in the Court's prior Opinion and Order (ECF No. 47) dismissing Plaintiffs' Amended Complaint (ECF No. 9) with leave to amend. The parties' familiarity with those facts is assumed.  Briefly stated, this case arises out of Governor Scott's executive orders in response to the Covid-19 pandemic.  The Governor is authorized to issue such orders under Chapter One, Title Twenty of the Vermont Statutes Annotated, "Emergency Management." Section 1 of that Chapter explains its purpose and policy:

> Because of the increasing possibility of the occurrence of disasters or emergencies of unprecedented size and destructiveness resulting from all-hazards and in order to insure that preparation of this state will be adequate to deal with such disasters or emergencies, to provide for the common defense and to protect public peace, health, and safety, and to preserve the lives and property of the people of the state . . . .

20 V.S.A. § 1.  Section 8 allows the Governor to "make, amend, and rescind the necessary orders, rules and regulations to carry out the provisions of this chapter with due consideration of the

2

plans of the federal government." 20 V.S.A. § 8(b)(1). Section 9 further explains the Governor's emergency powers:

> in the event of an all-hazards event in or directed upon the United States or Canada that causes or may cause substantial damage or injury to persons or property within the bounds of the State in any manner, the Governor may proclaim a state of emergency within the entire State or any portion or portions of the State. Thereafter, the Governor shall have and may exercise for as long as the Governor determines the emergency to exist the following additional powers within such area or areas....

20 V.S.A. § 9.

The Governor issued his first Covid-related emergency order on March 13, 2020, and a series of additional orders during the course of the pandemic. For example, a July 24, 2020 addendum regarding masks provided that:

> As of Saturday, August 1, 2020, Vermonters shall wear masks or cloth facial coverings over their nose and mouth any time they are in public spaces, indoors or outdoors, where they come into contact with others from outside their households, especially in congregate settings, and where it is not possible to maintain a physical distance of at least six feet.
>
> Nothing in this Order or any other State health and safety guidance shall require the use of a mask or cloth facial covering . . . for anyone . . . with a medical or developmental issue or challenge that is complicated or irritated by a facial covering, anyone with difficulty breathing or as further set forth in guidance issued by [Vermont Department of Health].
>
> A person who declines to wear a mask or cloth face covering because of a medical or developmental issue, or difficulty breathing, shall not be required to produce documentation, or other evidence, verifying the condition.
>
> Businesses and non-profit and government entities shall implement measures notifying customers or clients of the

3

requirements to wear masks or facial coverings, which may include but shall not be limited to, posting signage stating that masks or cloth facial coverings are required and denial of entry or service to customers or clients who decline to wear masks or facial coverings.[2]

Addendum 15, published April 30, 2021, rescinded this mask requirement in certain outdoor situations.[3] Addendum 16, published May 14, 2021, further provided that fully-vaccinated people "can resume activities without wearing a face covering over nose and mouth or physically distancing, except where required by federal, State or local laws, rules, and regulations, including local business and workplace guidance."[4] The Second Amended Complaint implicitly references executive orders imposing quarantine requirements on travelers and limiting the size of gatherings.

The original declaration of emergency expired on June 15, 2021.[5] Plaintiffs filed their Second Amended Complaint on July

---

[2] State of Vermont Addendum 2 to Amended and Restated Executive Order No. 01-20, at 2 (July 24, 2020), available at https://governor.vermont.gov/content/addendum-2-amended-and-restated-executive-order-no-01-20.

[3] State of Vermont Addendum 15 to Amended and Restated Executive Order No. 01-20 (April 30, 2021), available at https://governor.vermont.gov/content/addendum-15-amended-and-restated-executive-order-no-01-20-0.

[4] State of Vermont Addendum 16 to Amended and Restated Executive Order No. 01-20, at 3 (May 14, 2021), available at https://governor.vermont.gov/content/addendum-16-amended-and-restated-executive-order-no-01-20.

[5] Governor's Directive to the Secretary of Commerce and Community Development, June 14, 2021 available at https://governor.vermont.gov/sites/scott/files/CovidRestrictionsLiftedDirective.PNG.

15, 2021, alleging that Governor Scott had violated their rights and exceeded his authority. Specifically, Plaintiffs claim that the Governor's actions denied them their rights to assemble; petition the legislature; partake in society; make autonomous bodily decisions; work; worship; sing; and breathe. ECF No. 54 at 2, ¶ 2. Plaintiffs further claim that vaccine mandates, mask policies and virus testing constituted unreasonable searches and seizures under the Fourth Amendment; that the inability to purchase guns during a lockdown violated the Second Amendment; and that lockdowns and forced isolation constituted cruel and unusual punishment in violation of the Eighth Amendment. *Id.* at 26, ¶¶ 48-50. For relief, Plaintiffs request "trial by a fact finding jury, and actual and punitive damages to be determined by the jury and restitution" for the time and money they have expended in bringing this litigation. *Id.* at 33.

Defendants filed the pending motion to dismiss on July 29, 2021. Plaintiffs oppose the motion.

## Discussion

I. **Motion to Dismiss Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim requires

5

factual allegations that permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Pursuant to Rule 12(b)(6), when ruling on a motion to dismiss a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Plaintiffs bring this case without legal counsel. A document filed by an unrepresented party ("*pro se*") "is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, a *pro se* complaint must still state a plausible claim for relief. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Thus, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation

marks omitted). Nor may a court "invent factual allegations that [the plaintiff] has not pled." *Id.*

## II. Eleventh Amendment Immunity

Defendants argue that, to the extent Plaintiffs are asserting claims against them in their official capacities, those claims are prohibited by the Eleventh Amendment. The Eleventh Amendment bars private civil actions brought in federal court against state officials acting in their official capacities, absent an express waiver of sovereign immunity by the state or a valid congressional abrogation. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-102 (1984); *Alden v. Maine*, 527 U.S. 706, 754 (1999). An exception to this rule, recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908), allows a claim that "(1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective." *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020). The Court previously informed Plaintiffs of the *Ex Parte Young* exception.

With no executive orders currently in effect in Vermont, and with the declaration of emergency having expired, Plaintiffs are not seeking prospective relief at this time. Indeed, the Second Amended Complaint requests only monetary damages. ECF No. 54 at 33. Accordingly, the *Ex Parte Young* exception does not apply. Vermont has not consented to a suit for damages, *see*

7

12 V.S.A. § 5601(g) (expressly preserving Eleventh Amendment immunity), and Congress has not abrogated Vermont's sovereign immunity.  Plaintiffs' claims against Defendants acting in their official capacities are therefore dismissed.

### III. Qualified Immunity

Defendants next argue that, to the extent Plaintiffs are bringing claims against them in their individual capacities, those claims are barred by qualified immunity.  The qualified immunity doctrine "is intended to provide government officials with the ability to 'reasonably ... anticipate when their conduct may give rise to liability for damages.'"  *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)).  Public officials are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  A court need not determine whether a defendant violated a plaintiff's rights if it first decides that the right was not clearly established.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

This Court previously found that Plaintiffs failed to allege plausible violations of their First Amendment rights.  Plaintiffs have re-alleged their claims, but have not

persuasively refuted the Court's conclusions. The Court further found no merit in Plaintiffs' takings and substantive due process claims. To the extent those claims are raised again, the Court finds no basis for reconsidering its prior rulings. Plaintiffs' other constitutional claims, such as their assertion of Second Amendment violations, are equally meritless.

As a result of the government's actions in response to the Covid-19 pandemic, Plaintiffs undoubtedly experienced curbs on certain aspects of daily life. The Court is not without sympathy for those who, as a result of such limitations, found themselves unable to perform on stage, sing in groups, gather in large venues, or see family members. The limitations, however, did not necessarily amount to constitutional harm. *See, e.g., City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) ("It is possible to find some kernel of expression in almost every activity a person undertakes . . . but such a kernel is not sufficient to bring the activity within the protection of the First Amendment."). Furthermore, as Chief Justice Roberts recently explained,

> [o]ur Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect." *Jacobson v. Massachusetts*, 197 U.S. 11, 38, 25 S. Ct. 358, 49 L. Ed. 643 (1905). When those officials "undertake[ ] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." *Marshall v. United*

9

>*States*, 414 U.S. 417, 427, 94 S. Ct. 700, 38 L.Ed.2d 618 (1974).

*S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring).  Consequently, "[u]nder *Jacobson*, the state may curtail constitutional rights in response to a society-threatening epidemic so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'"  *Columbus Ale House, Inc. v. Cuomo*, 495 F. Supp. 3d 88, 92 (E.D.N.Y. 2020) (quoting *Jacobson*, 197 U.S. at 31); *see also In re Rutledge*, 956 F.3d 1018, 1028 (8th Cir. 2020).

Here, Plaintiffs have failed to plausibly allege that the Governor's emergency orders bore "no real or substantial relation" to public health.  *Jacobson*, 197 U.S. at 31; *see, e.g., Jones v. Cuomo*, No. 20 CIV. 4898 (KPF), 2021 WL 2269551, at *8 (S.D.N.Y. June 2, 2021).  And although *Jacobson*'s deferential standard has at times been challenged, *see Hopkins Hawley LLC v. Cuomo*, 518 F. Supp. 3d 705, 713 (S.D.N.Y. 2021) (noting a "chorus of doubts" about *Jacobson*'s application in modern times), Plaintiffs' claims do not succeed under any recognized constitutional test.  Indeed, recent case law has established that regardless of the legal standard or level of scrutiny applied, restrictions such as those found in the

Governor's executive orders survive constitutional challenge. *See, e.g., Amato v. Elicker*, 534 F. Supp. 3d 196, 211 (D. Conn. 2021) (holding that executive orders limiting the number of people who can assemble "satisfy the intermediate scrutiny standard"); *id.* at 212 (dismissing due process claim alleging unconstitutional restriction on "right to pursue a living"); *Daniel Jean Lipsman v. Lorraine Cortes-Vasquez*, No. 21-CV-4631 (JMF), 2021 WL 5827129, at *2 (S.D.N.Y. Dec. 7, 2021) (holding that plaintiff did "not come close to alleging that the mask and social-distancing requirements rise to the level of being 'outrageous' or 'shocking' to 'the contemporary conscience'" required for a substantive due process violation) (quoting *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 109 (2021)); *Jones*, 2021 WL 2269551, at *10 (holding that quarantine requirement for travelers "withstands both strict scrutiny and rational basis review"); *Aviles v. Blasio*, No. 20 CIV. 9829 (PGG), 2021 WL 796033, at *18 (S.D.N.Y. Mar. 2, 2021) (holding that substantive due process challenge to in-school testing regime was unlikely to succeed).

Moreover, the consistency of these holdings makes plain that Governor Scott, and any other unnamed Defendants, did not violate clearly established federal law.  The Governor acted in response to a public health emergency, and the constitutionality of his actions must be viewed within that context.  *See*

11

*generally Jacobson*, 197 U.S. at 38.  As the United States District Court for the District of Minnesota recently concluded,

> [The Governor] issued executive orders in the midst of a novel global pandemic.  Certainly, the existence of an ongoing pandemic does not eradicate constitutional rights.  But when assessing the facts as they appeared to state actors, ignoring this unprecedented context would result in defining constitutional rights with an excessive degree of generality.  As such, it is not clear that [the Governor] had fair warning that the [executive orders] violated Plaintiffs' rights, if they in fact do so.

*Northland Baptist Church of St. Paul, Minnesota v. Walz*, 530 F. Supp. 3d 790, 807 (D. Minn. 2021).  Accordingly, based upon the allegations set forth in the Second Amended Complaint, the Court finds no plausible legal basis for holding Defendants liable. Plaintiffs' federal claims brought against Defendants in their individual capacities are, therefore, dismissed.

**IV.  Standing**

The Court also reiterates its prior holding with respect to Plaintiffs' lack of standing.  To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  As the Court explained previously, generalized claims of injury are insufficient, since federal courts are not "merely publicly funded forums for the ventilation of public

grievances." *Valley Forge Christian Coll. v. Am. United for Separation of Church and State*, 454 U.S. 464, 471 (1982); *see also Nowlin v. Pritzker*, No. 20-1229, 2020 WL 5850844, at *5 (C.D. Ill. Oct. 1, 2020) ("[S]tanding must be based on an injury more particularized and more concrete than the mere assertion that the 'Governor's executive orders deprived plaintiffs of First Amendment and other fundamental rights and take their property without just compensation.'"); *Thomas v. Baker*, No. 20-11438, 2020 WL 4583847, at *2 (D. Mass. Aug. 10, 2020).

The Second Amended Complaint includes both generalized and personal allegations of harm.  While personal claims may be cognizable, standing lies only if the harm is "fairly traceable to the challenged action."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see also California v. Texas*, 141 S. Ct. 2104, 2117 (2021) ("[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party . . . , standing is not precluded, but it is ordinarily substantially more difficult to establish.") (citation omitted).  Here, Plaintiffs assert injuries that were suffered largely as a result of independent actions by third parties.  For example, Plaintiff Porta claims that her son was wrongfully punished at school for not wearing a mask.  ECF No. 54 at 16.  Plaintiff Hogue claims that he has been unable to perform in theaters because the theatres closed.  *Id.* at 14-15.

13

Plaintiff Tarrant alleges that her performances were similarly curtailed by private closures. *Id.* at 11-12. Plaintiff Peyton's green building business allegedly suffered lost profits due to the inability to attend trade shows and educate the public. *Id.* at 20-21. These injuries reflect largely-private efforts to curtail the impact of the Covid-19 pandemic. The Court therefore accepts Defendants' contention that Plaintiffs, insofar as their allegations arise primarily from independent third-party conduct, lack standing to claim injuries resulting from the Governor's executive orders.

**V.   Remaining Claims and Motions**

As set forth above, Plaintiffs' federal claims are dismissed on the basis of qualified and sovereign immunity. Plaintiffs' lack of standing provides an additional basis for dismissal. To the extent Plaintiffs bring Vermont constitutional or statutory claims, those claims are dismissed for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Because the underlying case is being dismissed, all remaining pending motions (ECF Nos. 60, 62, 69) are denied as moot.

**Conclusion**

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 55) is **granted**, all other pending motions (ECF

Nos. 60, 62, 69) are **denied** as moot, and the case is **dismissed** without leave to amend.  This case is **closed.**

DATED at Burlington, in the District of Vermont, this 21st day of December, 2021.

/s/ William K. Sessions III  
William K. Sessions III  
U.S. District Court Judge